UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-21830-CIV-GOLD/DUBÉ

MAURICIO VIDAL,

    Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before this Court on the Motion for Summary Judgment filed by the Plaintiff (D.E. #17) and the Motion for Summary Judgment filed by the Defendant (D.E. #18) pursuant to a Clerk's Notice of Magistrate Judge Assignment entered by the Clerk of Court, United States District Court for the Southern District of Florida. The issue before the Court is whether the record contains substantial evidence to support the denial of benefits to the Plaintiff, Mauricio Vidal (hereinafter "Vidal" or "Plaintiff").

### I. FACTS

Vidal filed an application for supplemental security income (hereinafter "SSI") on April 21, 2005, which asserted disability as of January 10, 1992. (R. 79-82).[1] The application was denied initially and on reconsideration. (R. 30-31, 55-58, 64-67). Following a hearing on August 12, 2008 (R. 463-486), the ALJ issued a decision denying the request for benefits. (R. 18-28). The Appeals Council denied a request for review. (R. 5-8).

---

1. All references are to the record of the administrative proceeding filed as part of the Defendant's answer.

The Plaintiff, age 45 at the time of the hearing on August 12, 2008, testified he completed the 7th grade and previously worked in a pizzeria and a car wash. (R. 466). The Plaintiff further testified he stopped working in 2002 because of a mental condition, which he described as constant depression, also being afraid to leave the house and not having any friends. According to Vidal, he previously used cocaine but stopped the previous year after entering a drug treatment program. (R. 467). The Plaintiff added that he does not use marijuana.

Vidal stated has never had a driver's license. (R. 468). The Plaintiff claimed he could not remember how often he saw a doctor in 2005 or 2006, but said that in 2007 he saw one every month or every other month. (R. 469). Additionally, the Plaintiff stated that each session with his doctor lasts a half hour. He added that he has never been referred to psychotherapy or group therapy. (R. 470). The Plaintiff testified he currently takes five different prescribed medications. The Plaintiff asserted that despite taking medications, he does not sleep well at night. (R. 471). The Plaintiff testified he sometimes naps during the day but he generally tries not to.

According to the Plaintiff, he sleeps about 5 non-consecutive hours a night. Vidal stated he lives with his uncle who is currently working. The Plaintiff said he can stand and sit with no problem, but has problems lifting with his hands. (R. 472). He added that he can sometimes lift up to 5 pounds if he uses both hands, but eventually his hands become tired. (R. 472-473). The Plaintiff testified he spends the majority of his day watching television and he does not go anywhere or socialize with friends. (R. 473). Vidal also testified his uncle and mother do the dishes, laundry, housework and cooking. The Plaintiff said that although his uncle works he does the cooking. The Plaintiff stated he has no problems eating and reasserted that he spends his entire day watching television. (R. 474).

Additionally, Vidal testified his problems lifting stem from a glass table being dropped on

his right hand in 1996. He explained that the nerves and tendons in his right hand were all damaged and he is right hand dominant. The Plaintiff testified that as a result of that injury, he cannot make a fist, and holding a pen is difficult because of the pain. (R. 475). The Plaintiff further testified he always wears t-shirts because he has problems buttoning shirts. According to Vidal, he cannot hold a cup because his fingers go numb and he has no feeling in them. (R. 476). The Plaintiff testified that as a result of having to overcompensate in using his left had, he developed carpal tunnel syndrome in both hands for which he had release surgery in 2006. (R. 477).

The Plaintiff stated he still experiences numbness in his left hand. (R. 477-478). Vidal also stated many things are difficult to do with his left hand because he never learned how to use it. Vidal testified that numbness and weakness in both hands is what prevents him from lifting. The Plaintiff stated he only holds cups with his left hand, but sometimes drops things with his left hand as well. (R. 478). Vidal explained that he holds a fork in one hand and once he feels discomfort he switches it to the other hand. The Plaintiff stated he has been treated for 3 years at Miami Behavioral Institute for his various mental impairments. (R. 479).

According to the Plaintiff, he hears whispers, although he does not know who is whispering or what they are saying. The Plaintiff claimed he hears these whispers every day and they last about half the day. Vidal stated he is depressed most of the time. He explained the depression as not wanting to leave the house and feeling suicidal. (R. 480). The Plaintiff stated he has never attempted suicide, but he has been hospitalized as a result of considering it. The Plaintiff also stated as a result of depression his energy level fluctuates. (R. 481). Additionally, Vidal stated he cries and is sad all the time. The Plaintiff testified he does not like to be around people because he is not comfortable. He added that he feels people talk about him and say he is crazy. The Plaintiff further testified he does not leave the house because he thinks people are after him.

Additionally, the Plaintiff stated he has difficulty concentrating and his mind is constantly daydreaming. The Plaintiff also stated he has a loss of memory and cannot really remember things. (R. 482). Vidal asserted about 7 times a month, he does not feel like getting out of bed, showering or eating. He said when that happens, he only wants to remain in bed and feels like dying. The Plaintiff claimed he has no friends and does not do anything for fun aside from visit his sister with his mother. At his sister's house, he watches television. The Plaintiff stated he talks to his doctor about his problems. (R. 483). Vidal also stated he gets drowsy as a result of taking his medications but not to the point where he falls asleep. Vidal testified since he stopped using cocaine his mood has actually worsened. Vidal stated he has told his doctor and has had his medications changed several times. (R. 484).

In addition to the testimony presented at the hearing, medical records were submitted to the ALJ. However, a review of the medical records and the specific issues raised by the Plaintiff in his Motion for Summary Judgment shows that the resolution of the issues do not require this Court to specifically set out all the medical evidence in detail. Accordingly, this Court will discuss the legal issues involved and will incorporate the facts as appropriate within the arguments presented below.

After a hearing and review of the record, the ALJ issued an opinion finding that the Plaintiff had the following severe impairments: depressive disorder and a history of substance abuse. The ALJ further found that the Plaintiff did not have an impairment or combination of impairments that meets or equals a listing. (R. 23).

The ALJ determined that the Plaintiff's RFC was as follows:

> ... to perform a full range of work at all exertional levels but with the following nonexertional limitations: He is able to understand, remember, and carry out simple job instructions, respond appropriately to supervision, co-workers, and usual work situations, and to deal with changes in a routine work setting. These abilities are

>consistent with an ability to perform unskilled work. Social Security Rulings 85-15 and 96-9p.

(R. 24).

The ALJ found that the Plaintiff could did not have past relevant work but considering the Plaintiff's age, education, work experience and RFC, Vidal could perform jobs which existed in significant numbers in the national economy, and thus, was not disabled. (R. 27-28).

## II. LEGAL ANALYSIS

Judicial review of the factual findings in disability cases is limited to determining whether the record contains substantial evidence to support the ALJ's findings and whether the correct legal standards were applied. 42 U.S.C. section 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Kelley v. Apfel, 185 F.3d 1211, 1213 (11th Cir. 1999); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). "Substantial evidence" is more than a scintilla, but less than a preponderance and is generally defined as such relevant evidence which a reasonable mind would accept as adequate to support a conclusion. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

In determining whether substantial evidence exists, the court must scrutinize the record in its entirety, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995); Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988). The reviewing court must also be satisfied that the decision of the Commissioner correctly applied the appropriate legal standards. See, Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987). The court may not reweigh evidence or substitute its judgment for that of the ALJ, and even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. See, Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991); Baker v. Sullivan, 880 F.2d 319, 321 (11th Cir. 1989).

The restrictive standard of review set out above applies only to findings of fact. No

presumption of validity attaches to the conclusions of law found by the Commissioner, including the determination of the proper standard to be applied in reviewing claims. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). The failure by the Commissioner to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal. Cornelius v. Sullivan, 936 F.2d 1143, 1145-1146 (11th Cir. 1991); See also, Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

Social Security regulations establish a five-step sequential analysis to arrive at a final determination of disability. See, 20 C.F.R. section 404.1520; 20 C.F.R. section 416.920 (a)-(f).

The ALJ must first determine whether the claimant is presently employed. If so, a finding of non-disability is made, and the inquiry ends. 20 C.F.R. section 404.1520(b). In the second step, the ALJ must determine whether the claimant suffers from a severe impairment or combination of impairments. If such a finding is not made, then a finding of non-disability results, and the inquiry ends. 20 C.F.R. section 404.1520(c).

At step three, the ALJ compares the claimant's severe impairments to those in the listing of impairments. 20 C.F.R. section 404.1520(d), subpart P, appendix I. Certain impairments are so severe, whether considered alone or in conjunction with other impairments, that if such impairments are established, the regulations require a finding of disability without further inquiry into the claimant's ability to perform other work. See, Gibson v. Heckler, 762 F.2d 1516, 1518, n.1 (11th Cir. 1985). If the impairment meets or equals a listed impairment, disability is presumed, and benefits are awarded. 20 C.F.R. section 404.1520(d).

Step four involves a determination of whether the impairments prevent the claimant from performing his or her past relevant work. If the claimant cannot perform his or her past relevant

work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show, at step five, that there is other work available in the national economy which the claimant can perform. 20 C.F.R. section 404.1520(e)-(f).

The claimant bears the initial burden of proving that he is unable to perform previous work. See, Barnes v. Sullivan, 932 F.2d 1356, 1359 (11th Cir. 1991). The inability to perform previous work relates to the type of work performed, not to merely a specific prior job. See, Jackson v. Bowen, 801 F.2d 1291, 1293 (11th Cir. 1986).

The Plaintiff's first point of contention is that the ALJ erred in failing to assign controlling weight to the Plaintiff's treating physician.

The opinion of a treating physician is entitled to substantial weight unless good cause exists for not heeding the treating physician's diagnosis. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause has been seen when the treating doctor's opinion was not bolstered by the evidence; the evidence supported a contrary finding or the opinion was conclusory or inconsistent with the physician's own medical records. If the ALJ disregards the opinion of a treating physician, the ALJ must clearly articulate his reasons. See Phillips v. Barnhart, 357 F.3d 1232, 1240-1241 (11th Cir. 2004).

On November 9, 2007, Dr. Hernandez completed a Mental Capacity Assessment. The doctor opined that the Plaintiff had "extreme" limitations in the ability to carry out detailed instructions; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; work in coordination with or in proximity to others without being distracted by them; and perform at a consistent pace with a one hour lunch break and two 15 minute rest periods. "Extreme" was defined as, "[t]he individual is unable to function in this area. There is no useful ability to function in this area." (R. 281).

The doctor also opined that the Plaintiff had "marked" limitations in the ability to carry out very short and simple instructions; maintain attention and concentration for extended periods; make simple work-related decisions, complete a normal workday without interruptions from psychologically based symptoms; and complete a normal workweek without interruptions from psychologically based symptoms. "Marked" was defined as, "[t]he individual is unable to function in this area, two thirds of an eight hour work day." The doctor stated the Plaintiff would likely miss 4 or more days a month of work. (R. 281). The doctor further found the Plaintiff had marked limitations in the ability to interact appropriately with the general public and ask simple questions or request assistance; and extreme limitations in all other areas of social interaction. Dr. Hernandez stated the Plaintiff had extreme limitations in all areas of adaptation. (R. 282).

With regard to the opinion of Dr. Hernandez, the ALJ stated as follows:

> Dr. N. Hernandez has been the claimant's treating source at Miami Behavioral Health Center. He furnished a residual functional capacity assessment through counsel, dated July 2008, indicating extreme limitations in all specified areas (Exhibits 296-300). I reject it as utterly unsupported by the medical record, including the progress notes at Miami Behavioral Health Center. These notes in fact contradict the extreme limitations, and the inconsistency between the clinical record and the residual functional capacity assessment submitted through counsel suggests a motivation for secondary gain.

(R. 25).

This Court previously held that, a treating physician's opinion will be given controlling weight if it is well supported by medically acceptable clinical and diagnostic techniques and is consistent with other evidence in the record. Holley v. Charter, 931 F. Supp. 840, 849 (S.D. Fla. 1996). Further, a treating doctor's opinion is entitled to more weight than a consulting doctor's opinion. Wilson v. Heckler, 734 F. 2d 513, 519 (11th Cir. 1984). This Court does not find that the ALJ's analysis to be inconsistent with the required legal standards. A review of the record shows that

the ALJ took into consideration each of the Plaintiff's treating physician's testing, diagnosis and reports and properly concluded that the treatment notes were inconsistent with the extreme limitations found by Dr. Hernandez in the Mental Capacity Assessment. (R. 25-26).

Treatment notes from Miami Behavioral Health Center consistently demonstrated the Plaintiff's appearance was appropriate; general attitude was cooperative; speech unremarkable; motor behavior, normal; affect, appropriate; mood, thought process and thought content, unremarkable; and the Plaintiff was not suicidal or homicidal. (R. 224, 226-230). On several occasions the Plaintiff reported auditory hallucinations and/or paranoia (R. 227-230) while other times he did not. (R. 224, 226). The Plaintiff's sensorium was alert; he was alert to time, place and person; memory was unremarkable; and the Plaintiff's insight, judgment and reliability were fair. The doctor did not note side effects from medications nor was the medication changed. (R. 224, 226-230). These treatment notes are inconsistent with the extreme limitations found by Dr. Hernandez. It is the opinion of this Court that the ALJ specifically provided the good cause required by the Regulations.

The Court notes that both sides have made arguments concerning the various GAF scores assigned to the Plaintiff throughout the record which ranged from 40 to 67. However, an ALJ cannot rely solely on a GAF score to determine the extent of a Plaintiff's impairment. The ALJ review the GAF scores and used the scores as part of the overall analysis of the Plaintiff's condition.

The Plaintiff further contends that Dr. Hernandez found the Plaintiff met listing 12.04. (R. 284-285). However, the Eleventh Circuit reviewed listing impairments and stated as follows:

> The Listing of Impairments describes, for each of the major body systems, impairments which are considered severe enough to prevent a person from doing any gainful activity. *See* 20 C.F.R. § 404.1525(a). Part A of the Listing of Impairments contains medical criteria that apply to adults age 18 and over. *See* 20 C.F.R. §

9

> 404.1525(b); *see also* 20 C.F.R. § 404, Subpt. P, App. 1. To "meet" a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement. *Id.* 20 C.F.R. § 404.1525(a)-(d). To "equal" a Listing, the medical findings must be 'at least equal in severity and duration to the listed findings.' *See* 20 C.F.R. § 404.1526(a). If a claimant has more than one impairment, and none meets or equals a listed impairment, the Commissioner reviews the impairments' symptoms, signs, and laboratory findings to determine whether the combination is medically equal to any listed impairment.

Wilson v. Barnhart, 284 F. 3d 1219 (11th Cir. 2002). Additionally, while the ALJ must consider whether a claimant meets a listing, the ALJ need not mechanically recite that a claimant does not meet a listing in his decision, as this fact may be implied from the record. Hutchinson v. Bowen, 787 F. 2d 1461, 1463 (11th Cir. 1986). As the ALJ properly rejected the opinion of Dr. Hernandez and the burden to demonstrate a listed impairment has been met rests with the Plaintiff, it would be error to rely on the opinion of Dr. Hernandez to prove the listed impairment has been met or equaled.

The Plaintiff next contends the ALJ erred in not finding the Plaintiff's bilateral carpal tunnel syndrome to be a severe impairment. The determination of whether an impairment is severe or not at step two of the sequential analysis is a threshold inquiry. McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986). The court in McDaniel elaborated on the requirements for a finding of severity as follows:

> It allows only claims based on the most trivial impairments to be rejected. The claimant's burden at step two is mild. An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience. Claimant need show only that her impairment is not so slight and its effect is not so minimal.

McDaniel, 800 F.2d at 1031; see also, Bridges v. Bowen, 815 F.2d 622, 625 (11th Cir. 1987).

With regard to the carpal tunnel syndrome, the ALJ stated as follows:

> I note that the claimant underwent bilateral carpal tunnel syndrome release in August 2006 (Exhibit 162F). However, I find that the claimant has no severe limitations resulting therefrom, noting that neurological findings have been negative and dexterity has been intact.
>
> Moreover, the claimant's mother indicated in the record that the claimant had no problem whatsoever with the left hand, and only a slight problem with the right hand such that he was able to perform all activities of daily living including turning doorknobs and buttoning his clothing (Exhibit 113F).
>
> The claimant acknowledged in his testimony that his primary problem is mental, and his alleged manual limitations remain unsubstantiated. He acknowledged that he takes care of his personal needs without a problem (Exhibit 56E).

(R. 27).

A Nerve Conduction Study taken on March 27, 2008, revealed as follows:

> There was electroneurophysiological evidence for: a) monoeuritis multiplex (median, ulnar) in the right upper extremity in the distal forearm at the site of the trauma with significant residual dysfunction of the sensory nerves and also prolonged distal latency of the median nerve at the wrist; b) left median nerve dysfunction at wrist (carpal tunnel) resulting in mild axon loss.

(R. 174).

A diagnosis alone is not sufficient to prove disability. The record evidence does not support that the carpal tunnel syndrome has more than a minimal effect on the Plaintiff's ability to perform

work. As noted by the ALJ, the Plaintiff's mother stated the Plaintiff has slight difficulty with his right hand but is able to use the hand for normal daily activities. She also said he can open a door, button his cloths and the left hand was completely normal. (R. 346). Hospital records also indicated no weakness, intermittent numbness and normal reflexes. (R. 346, 432). As the record does not reveal that the carpal tunnel syndrome would create more than a minimal effect on the Plaintiff's ability to work, the Court does not find error present.[2]

The Plaintiff's next point of contention is that the ALJ's RFC assessment is not supported by substantial evidence.

> The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.

SSR 96-8p (4). More specifically, the Plaintiff contends that the ALJ's RFC was not supported by substantial evidence because the RFC was contrary to the limitations placed on the Plaintiff by the Plaintiff's treating psychiatrist.

As noted above, the ALJ determined that the Plaintiff retained the residual functional to perform a full range of work at all exertional levels with the nonexertional limitations of being able to understand, remember, and carry out simple job instructions, respond appropriately to supervision, co-workers, and usual work situations, and to deal with changes in a routine work setting. As the

---

2. The Court notes that in support of the Plaintiff's second point of contention, the Plaintiff cited to a December 17, 2007 Residual Functional Capacity Questionnaire prepared by Dr. Schiffman. (R. 277-279). However, this RFC assessment was properly rejected by the ALJ (R. 27) as the extreme limitations were not supported by any evidence in the record including the doctor's progress notes or other diagnostic studies.

Court also noted above, the ALJ properly assigned the opinion of the Plaintiff's treating psychiatrist no weight as it was not supported by the treatment records. As such, the Court finds the ALJ's RFC assessment is supported by substantial evidence.

The Plaintiff's remaining point of contention is that the ALJ erred in misstating the facts of the record in finding the Plaintiff not disabled. More specifically, the Plaintiff contends that the ALJ misstated that there were no diagnostic studies or progress notes to support any physical limitations; and that despite the carpal tunnel release surgery in August 2006, neurological findings had been negative and dexterity had been intact. Any error regarding a failure to mention the March 2008 nerve conduction study is harmless because the error would not change the outcome in this case. As specifically discussed by this Court herein, the record does not support a finding that the Plaintiff's carpal tunnel syndrome was severe.

The Plaintiff also contends that the ALJ's assertion that the Plaintiff had "stopped all substance abuse is questionable" is mistaken, as it is not explained and contrary to the record evidence. However, the ALJ did provide several reasons for this finding. (D.E. #17, pg. 19). Namely, the ALJ noted that when the Plaintiff was evaluated by Dr. M. Levia, the Plaintiff reported abstinence but this was not the case; the ALJ also noted that in an evaluation with Dr. J. Weinstein, the Plaintiff was evasive about his legal history and while the doctor noted the Plaintiff was in sustained remission in 2006, the Plaintiff himself testified he was not clean until October 2007; the ALJ also noted the extensive history of multiple incarcerations and that the substance abuse was a longitudinal problem. (R. 25-26). Moreover, the record supports that the Plaintiff's substance abuse issues continued beyond October 2007. For example, in the Mental Capacity Assessment completed by Dr. Hernandez on July 29, 2008, the doctor was asked what impact the use of alcohol or other

substances had in determining the assessment and he responded, "episodes of acute exacerbation/relapse 2006." (R. 159). Also, treatment notes from Miami Behavioral revealed polysubstance abuse in May and June 2008. (R. 164-165). For the reasons set forth, the Court finds that the ALJ's opinion supported by substantial evidence.

### III. CONCLUSION AND RECOMMENDATION

Based on the foregoing, this Court finds that the decision of the ALJ was supported by substantial evidence and that the correct legal standards were applied. Therefore, it is the recommendation of this Court that the decision of the Commissioner be **AFFIRMED**. Accordingly, the Motion for Summary Judgment filed by the Plaintiff (D.E. #17) should be **DENIED** and the Motion for Summary Judgment filed by the Defendant (D.E. #18) should be **GRANTED**.

Pursuant to Local Magistrate Rule 4(b), the parties have fourteen (14) days from service of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Alan S. Gold, United States District Judge. Failure to file objections timely shall bar the parties from attacking on appeal the factual findings contained herein. Loconte v. Dugger, 847 F.2d 745 (11th Cir. 1988), cert. denied, 488 U.S. 958 (1988); R.T.C. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993).

**DONE AND ORDERED** this  6  day of January, 2011.

ROBERT L. DUBÉ
UNITED STATES MAGISTRATE JUDGE